HERMAN VEEDER, Respondent, v. WILLIAM MUDGETT et al., Appellants.

The liability to creditors imposed upon the stockholders of a corporation organized under the General Manufacturing Act (§ 10, chap. 40, Laws of 1848), is not taken away by the making and recording of a certificate, stating, as required by said act (§ 11), the amount of its capital stock, and that the whole thereof has been paid in. To end the liability both the stock must be paid in and the certificate made and recorded; the certificate is not conclusive as to the payment.

As to whether the certificate is even presumptive evidence of payment, quære.

The stockholders' liability is not confined to the original capital stock; it attaches on an increase of the capital, as authorized by the act (§§ 20, 21, 22), to such increased capital.

Where, however, the original capital is paid in, in full, and a certificate made and recorded, the liability of the stockholders thus far is ended, and cannot be revived by an increase of the capital.

The holders of the original stock, therefore, are not liable thereon because of a failure to pay in the increased capital; the liability rests solely upon the holders of the increased stock, and is limited by the par value of such stock.

Where an attempt has been made to increase the capital of such a corporation, stockholders, who have voted for the increase, accepted their share of the additional stock, and received dividends thereon, as against creditors, are estopped from questioning the validity of the increase.

The provision of said act requiring the recording of the certificate within thirty days (§ 11) is directory merely, and where a certificate is properly

made and given to the county clerk for record, the duty imposed upon the stockholders is performed, and they are not liable because of an omission to record, which is wholly the fault of that officer.

The R. I. Co. was organized in 1868 with a capital of $200,000, which was paid in, but no certificate thereof was made and recorded. In 1869 the trustees passed a resolution increasing the stock to $300,000, and at a meeting of the stockholders, by a vote of two-thirds, the increase was ratified; no notice of such meeting was published, nor was a certificate of its proceedings made and filed, as required by said act (§§ 21, 22). The increased stock was issued, but not fully paid in; holders thereof voted at stockholders' meetings, shared in dividends, and in all respects were treated and acted as holders of legal stock. In 1873 a certificate was made by the proper officers and delivered to the county clerk for record, which stated the capital to be $300,000, and that it was actually paid in. In an action brought by a creditor to enforce the liability imposed upon stockholders because of failure to pay in the capital stock, *held,* that the certificate was sufficient to exonerate the holders of the original stock, but was not conclusive, as against the creditors, that the increased stock had been paid in; and that the holders thereof were estopped from questioning the validity of the increase; also that, as the indebtedness provable under said act (§ 24) was more than the amount of the increase, such holders were liable to the extent of the par value of the increased stock.

The company being indebted to J., a subscriber for original stock, for work in constructing its furnaces, the amount of his account was applied as a payment upon his stock. *Held,* that this was a payment in money within the meaning of the act (§ 14).

Among the claims presented was one in favor of a bank which had discounted a note, dated October 2, 1876, payable in four months. Upon maturity it was renewed for four months, and again renewed for five months. Suit was brought against the company on November 3, 1877. *Held,* that this was a debt to be paid within one year from the time it was contracted, and that suit was brought within one year after it became due, within the meaning of the provision of said act (§ 22), exempting stockholders from liability for claims not contracted to be paid, or not sued within the year; and that the claim was properly allowed.

Defendants M. and T. were trustees of said company for the years of 875 and 1876. No annual reports for those years were filed as required by said act. (§ 12.) A creditor, after judgment against the company in an action brought more than a year after his claim fell due, sued said trustees because of the omission to comply with such requirement, and recovered judgment for the amount of his claim, which they paid. They claimed to be allowed the amount so paid, in reduction of their liability. *Held,* that said claim was properly rejected.

Said defendants were also sued by another creditor, because of such omission. They settled the action before judgment, and took a transfer of the claim, which consisted of notes of the company, dated October 1,

1875, payable on demand. No action was brought against the company thereon until October 27, 1877. This claim they also asked to have allowed. *Held*, that it was properly rejected.

McV., a stockholder, died before any of the debts allowed herein were contracted; the stock went into the hands of his executors, who advertised for claims against the estate. This publication was commenced within a month after they qualified. After the expiration of the time fixed by the advertisement they distributed all but a small portion, without reserving sufficient to meet any liability upon the stock. The estate was amply sufficient to meet all liabilities. *Held*, that the executors were personally liable for any deficiency after application of the residue in their hands.

(Argued February 1, 1884 ; decided March 18, 1884.)

THESE are appeals by fifteen of the defendants, who were stockholders of the Rochester Iron Manufacturing Company, against whom separate judgments were entered upon an order of the General Term of the Supreme Court, in the third judicial department, made December 16, 1882, which affirmed judgments against said defendants entered upon the report of a referee, and also affirmed an interlocutory judgment.

This action was brought by plaintiff as a creditor of said company, which was a corporation, organized under the General Manufacturing Act, on his own behalf, and that of other creditors, against said company, its receiver and its stockholders, also against other creditors who had commenced actions against individual stockholders.

The object of the action was to enforce the liability imposed upon stockholders by said act, because of an alleged failure to pay in the full amount of the capital stock.

The said corporation was organized in 1868 ; its capital stock, as fixed in and by its articles of incorporation, was $200,-000, all of which was paid in cash, save as hereinafter stated, but no certificate to that effect was made and recorded, as required by said act. In March, 1869, its directors passed a resolution increasing the stock to $300,000, and at a meeting of the stockholders held April 15, 1869, a resolution was passed by a vote of those holding more than two-thirds in amount of the original stock, ratifying the increase.

The said meeting, however, was not formally called, nor was a certificate of the increase of capital made and filed as prescribed by said act. Eighty-five shares of the original stock were issued in payment for lands purchased by the company, and two calls upon one hundred and forty shares of said stock, issued to one Jones, were paid by applying the same as so much payment upon a contract for the construction by him of furnaces for the company. The $100,000 additional stock was not fully paid in; it was all issued to stockholders who voted for the increase; its holders subsequently received dividends thereon, voted at stockholders' meetings, and in all respects were treated and acted as stockholders. A certificate was made by the proper officers January 13, 1873, stating that the stock of the corporation was $300,000, and that the whole amount thereof had been paid in. This certificate was filed in the office of the clerk of Monroe county on the day it was executed, but, as found by the referee, solely through the negligence of the clerk, was not recorded until June 22, 1880. The company became insolvent and a receiver was appointed in 1878.

Upon the report of a referee finding substantially these facts an interlocutory judgment was entered, establishing the liability of the stockholders, staying the actions brought by the creditors defendants, and requiring the creditors to appear to establish their claims, etc., and, upon the report of the referee as to such claims, separate judgments were rendered against said stockholders.

Among the claims presented to the referee was one in favor of the Bank of Hamilton for $10,000. This claim was upon a promissory note, dated October 2, 1876, payable four months from date. Upon maturity it was renewed for four months, and was again renewed for five months. Suit was brought upon said claim November 3, 1877; judgment perfected, and execution issued and returned unsatisfied. This claim was objected to on the ground that it was not to be paid within one year from the time it was contracted. It was allowed by the referee.

Defendants Mudgett and Tillinghast were trustees of said

company for the years 1875 and 1876. No annual reports for those years were made and filed by the officers of the company, as required by section 12 of said act. A creditor, after judgment against the company, in an action which was brought more than a year after his claim fell due, sued said trustees because of such omission, and obtained judgment for the amount of his claim, which they paid. Said trustees filed a petition as creditors under the interlocutory judgment, and claimed upon the hearing before the referee, that they were entitled to be allowed the amount so paid in reduction of their liability. The referee rejected the claim.

Said defendants Mudgett and Tillinghast were also sued by another creditor, Eastwood, for the amount of his claim, because of failure to make and file said reports. They settled the action before judgment, and took an assignment of said claim. The claim so assigned consisted of notes made by the company October 1, 1875, payable on demand. No action was brought against the company until October 27, 1877. Said defendants also asked to be allowed the amount of said claim. It was rejected by the referee.

David McVean, a stockholder in said company, died on April 28, 1876, before any of the creditors' claims in question in this action were contracted, holding shares both of the original and the increased stock. This stock went into the hands of his executors. They advertised for claims against the estate, but commenced the publication within one month after they qualified. After the expiration of the time fixed by the advertisement they distributed the testator's estate, save a small portion, without reserving sufficient to meet any liability upon the stock. The estate was ample to pay all liabilities, including that upon the stock. The referee held the executors personally liable for the deficiency after applying the residue in their hands.

Further facts appear in the opinion.

*James Breck Perkins* for Mudgett and others, appellants. The requirement of the statute as to the time of recording

the certificate is directory under all settled rules. (*Van Vleet v. Slauson*, 45 Barb. 317; *Juliand* v. *Rathbone*, 39 id. 97; *Wood* v. *Chapin*, 13 N. Y. 509; *People* v. *Supervisors*, 34 id. 267, 272.) Giving the certificate to the clerk to record was all the act required. (*Sutherland* v. *Olcott*, 29 Hun, 161, 165.) If this certificate was wrong in stating the amount of the stock, or that it was full paid, the only remedy was under section 15 of the act imposing the penalty for a false certificate upon those making it. (*Schenck* v. *Andrews*, 57 N. Y. 133, 143; *Bonnell* v. *Griswold*, 80 id. 128; *Dodge* v. *Potter*, 18 Barb. 194; *Neele* v. *Perryhill*, 4 How. Pr. 16; *Dikeman* v. *Pudchafer*, 1 Abb. [N. S.] 33; *Jordan* v. *Farnsworth*, 15 Gray, 518; *Gorham* v. *Simmons*, 25 Minn. 87; *Boyton* v. *Hatch*, 47 N. Y. 228.) The receipt by Jones of the bill then due on the issue of the original stock was cash to the company. It was unnecessary to go through the form of exchanging checks. (*Beach* v. *Smith*, 30 N. Y. 116, 131.) No liability is imposed by statute for the non-payment of increased stock. (Laws of 1848, chap. 40, §§ 1–9, 20–23.) This act is severely penal and that it should be strictly construed. (*Garrison* v. *How*, 17 N. Y. 466; *Chase* v. *Ford*, 77 id. 1, 6, 8; *Bonnell* v. *Griswold*, 80 id. 128, 138; *Wood* v. *Meeks*, 7 Lea [Tenn.], 40–49.) The additional $100,000 was not issued in compliance with law, and was not stock at all. (Laws of 1848, chap. 40, §§ 20–23; *Peters* v. *Lincoln, etc., Co.*, 12 Fed. Rep. 513; *People* v. *Batchelor*, 22 N. Y. 128, 134; Angel & Ames on Corporations, chap. 14, § 1; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *Fuller* v. *Rowe*, 57 id. 23; *Central S' v'gs B'k* v. *Walker*, 66 id. 424; *De Witt* v. *Hastings*, 8 J. & S. 463; *Chubb* v. *Upton*, 5 Otto, 66; *Pullman* v. *Upton*, 6 id. 328; *Crow* v. *Easterly*, 4 Lans. 513.) The elements on which to base an estoppel are lacking. (*Crow* v. *Easterly*, 4 Lans. 513, 522; *Macedon Co.* v. *Lapham*, 18 Barb. 312; *Payne* v. *Burnham*, 62 N. Y. 69; *People* v. *Parker Vein Coal Co.*, 10 How. 543; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 480; *Lathrop* v. *Kneeland*, 46 Barb. 432.) The certificate recorded, and stating the capital stock was fully paid, protected

the stockholders. (*Steadman* v. *Eveleth*, 6 Metc. 114, 123; *Curtis* v. *Harlow*, 12 id. 36; *Schenck* v. *Andrews*, 57 N. Y. 133.) The claims allowed are barred by the statute of limitations. (*Phillips* v. *Therasson*, 11 Hun, 141; *S'vgs B'k* v. *Walker*, 66 N. Y. 42.) The defendant Mudgett was entitled to credit for $1,700 paid by him to the Rossie Iron Works. (*Garrison* v. *Howe*, 17 N. Y. 458, 463; *B'k of Poughkeepsie* v. *Watson*, 24 Wend. 473; *Talmadge* v. *Fishkill Iron Co.*, 4 Barb. 382; *Mathez* v. *Neidig*, 72 N. Y. 100, 106–7; *Agate* v. *Sands*, 73 id. 620.)

*Theodore Bacon* for Ely and others, appellants. The General Term erred in allowing plaintiffs to make up a record containing eighteen several judgments of affirmance; as there was but one judgment appealed from there could be but one affirmance. (*Webb* v. *Bulger*, 4 Hill, 588; *Tenbroeck* v. *Paige*, 6 id. 267; *Crim* v. *Cronkhite*, 15 How. Pr. 250, 253; *Johnson* v. *Farrell*, 10 Abb. 384.) The liability of all stockholders was terminated upon the filing of the certificate of January, 1873. (*Steuben Co. B'k* v. *Alberger*, 78 N. Y. 252; 2 R. S. 681, §§ 1, 12; *Bonnell* v. *Griswold*, 80 N. Y. 128; *Whitney Arms Co.* v. *Barlow*, 68 id. 34.)

*John Van Voorhis* for Cole & Galusha, appellants. The statement of the certificate that the capital of $300,000 was all paid up is conclusive. (*Steadman* v. *Eveleth*, 6 Metc, 114; *Curtis* v. *Harlow*, 12 id. 36; *Booth* v. *Campbell*, 37 Md. 522; *Pier* v. *Hanmore*, 86 N. Y. 95; *Bonnell* v. *Griswold*, 80 id. 128; *Chase* v. *Lord*, 77 id. 1; *Pier* v. *Hanmore*, 86 id. 95; *Schenck* v. *Andrews*, 57 id. 133, 143; *Bonnell* v. *Griswold*, 80 id. 128; *Dodge* v. *Potter*, 18 Barb. 194; *Neele* v. *Perryhill*, 4 How. Pr. 16; *Dikeman* v. *Pudchafer*, 1 Abb. [N. S.] 33; *Jordan* v. *Farnsworth*, 15 Gray, 518; *Gorham* v. *Simmons*, 25 Minn. 87.) The cause of action being penal in its nature and in derogation of the common law, the statute should be construed strictly and not extended beyond the limits to which it is plainly carried by its provisions. (*Gray* v. *Coffin*,

9 Cush. 199; *Chase* v. *Lord,* 77 N. Y. 1; *Steadman* v. *Eveleth,* 6 Metc. 114; Thompson on Liability of Stockholders, §§ 50–54; *Garrison* v. *Howe,* 17 N. Y. 458, 466; *Cabre* v. *McCune,* 26 Mo. 371; 1 Parsons on Contracts, 143; *Bonnell* v. *Griswold,* 80 N. Y. 128.) There is no individual liability of stockholders by reason of holding increased stock, to be found in the statute. (Laws of 1848, chap. 40, §§ 1–9, 20–23; *Smith* v. *Brown,* 13 Hun, 408; 80 N. Y. 560.) The increased stock not having been issued in compliance with the statute is not stock. (*Brown* v. *Smith,* 80 N. Y. 650; 13 Hun, 408, 413; *Fuller* v. *Rowe,* 57 N. Y. 23; *Central S'v'gs Bank* v. *Waker,* 66 id. 424.) The liability of stockholders for the debts of the corporation on account of the issue of increased stock cannot be established on the principle of estoppel. (Thompson's Liability of Stockholders, § 171; *Crowe* v. *Easterly,* 4 Lans. 513, 522; *Macedon Co.* v. *Lapham,* 18 Barb. 312; *Payne* v. *Burnham,* 62 N. Y. 69; *People* v. *Parker Vein Coal Co.,* 16 How. 543; *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480; *Lathrop* v. *Kneeland,* 46 Barb. 432; Bigelow on Estoppel, 532, 431, 437; *Dewitt* v. *Hastings,* 8 J. & S. 463.) The original $200,000 of stock was fully paid in as required by the statute. (*Beach* v. *Smith,* 30 N. Y. 116, 131; *People, ex rel.* v. *Vail,* 2 Cow. 624; *Dutchess Co.* v. *Davis,* 14 Johns. 238; *Chase* v. *Lord,* 77 N. Y. 8, 10, 25; *Dodge* v. *Potter,* 18 Barb. 193; *Dykeman* v. *Puckhafer,* 1 Abb. [N. S.] 32; *Bishop* v. *Cook,* 13 Barb. 326, 330; *Siminson* v. *Faliher,* 25 Hun, 570, 573; *People* v. *N. Y. C. R. R.,* 13 N. Y. 78, 82; *Chase* v. *Lord,* 77 id. 78.) The record of the certificate at length after the debts were contracted terminates all liability, if any, of the stockholders, then existing. (*Chase* v. *Lord,* 77 N. Y. 8; *Bonnell* v. *Griswold,* 80 id. 128; *Booth* v. *Campbell,* 37 Md. 525–7.) Where there is but one set of papers, one argument, and one judgment, the successful party is entitled to but one bill of costs, though the appellant appeared by different attorneys. (*Everson* v. *Gehrman,* 2 Abb. 413.)

*Satterlee & Yeoman* for Judson, appellant. It devolved

upon plaintiff to prove that the original stock was not all paid in before the certificate was recorded. (*Bruce* v. *Driggs*, 25 How. Pr. 71; *Chase* v. *Lord*, 77 N. Y. 1; Laws of 1853; chap. 333, § 2; *Howell* v. *C. & C. R. R.*, 51 Barb. 378, 380; *Beach* v. *Smith*, 30 N. Y. 116, 131.) The certificate filed was conclusive in favor of the stockholders as to the fact that the $300,000 had been paid in full. (*Steadman* v. *Eveleth*, 6 Metc. 114; *Curtis* v. *Harlow*, 12 id. 3, 6; *L. S. Iron Co.* v. *Drexel*, 90 N. Y. 87.) There was no valid increased stock. (*People* v. *Batchelor*, 22 N. Y. 128, 134; *Peters* v. *L. & N. W. R. R. Co.*, 12 Fed. Rep. 513; *People* v. *P. V. & C. Co.*, 10 How. Pr. 543; *Railway Co.* v. *Allerton*, 18 Wall. 232; *Lathrop* v. *Kneeland*, 46 Barb. 432; *M. & C. R. Co.* v. *Lapham*, 18 id. 312; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 44; *Merchants' B'k* v. *N. Y. & N. H. R. R. Co.*, 13 id. 599; Thompson on Stockholders, § 115; *De Witt* v. *Hastings*, 8 J. & S. 463, 474–5; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *Mokalumne Hill M. Co.* v. *Woodbury*, 14 Cal. 424, 426; *Cuykendall* v. *Douglass*, 19 Hun, 577.) The defendants are not estopped from denying the validity of the increased stock. (Bigelow on Estoppel, 532, 431, 437; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *Aspinwall* v. *Sacchi*, 57 id. 331; *Chubb* v. *Upton*, 95 U. S. 667; *Upton* v. *Hansbrough*, 3 Biss. 417; *Scovill* v. *Thayer*, 105 U. S. 143; *Lathrop* v. *Kneeland*,, 46 Barb. 432, 438–9; *Macedon* v. *Lapham*, 18 id. 312, 317.) There is no liability under the statute after the original stock is paid in and a certificate recorded as required, although the increased stock is valid. (*Chase* v. *Lord*, 77 N. Y. 8; *Bonnell* v. *Griswold*, 80 id. 128.) This certificate, though false, was a certificate within the meaning of the statute. (*Bonnell* v. *Griswold*, 80 N. Y. 128, 137–8; *Whitney Arms Co.* v. *Barlow*, 68 id. 34, 38; *Pier* v. *Hanmore*, 86 id. 95.) The certificate was recorded within the meaning of the statute at the time the trustees deposited it in the office of the county clerk before any of the debts were contracted. (*People, ex rel.* v. *Vail*, 2 Cow. 624; *Dutchess Co., etc.* v. *Davis*, 14 Johns. 238; *Chase* v. *Lord*, 77 N. Y. 8, 10, 25; *Dodge* v. *Potter*, 18

Barb. 193; *Dykeman* v. *Puckhafer*, 1 Abb. [N. S.] 32; *Bishop* v. *Cook*, 13 Barb. 326, 330; *Siminson* v. *Faliher*, 25 Hun, 570, 573; *Sutherland* v. *Alcott*, 29 id., 161; *People* v. *N. Y. C. R. R.*, 13 N. Y. 78, 82; *Chase* v. *Lord*, 77 id. 78.) The record of the certificate at length after the debts were contracted terminates all liability, if any, of the stockholders then existing. (*Chase* v. *Lord*, 77 N. Y. 8; *Bonnell* v. *Griswold*, 80 id. 128; *Booth* v. *Campbell*, 37 Md. 525–7.) The court had no power to allow an amendment to the complaint introducing a new cause of action, but only to insert "allegations material to the case." (Code of Civ. Pro., § 723; *Reeder* v. *Sayers*, 70 N. Y. 180, 190; *Ford* v. *Ford*, 35 How. 321; *Hochstetter* v. *Isaacs*, 44 id. 495–7; *Barnes* v. *Quigley*, 59 N. Y. 265; *Miller* v. *Moore*, 1 E. D. Smith, 740; *Verplanck* v. *Mercantile, etc., Co.* 1 Edw. Ch. 46, 52.)

*Edward C. James* for respondents. The court under the notices of appeal can only review those matters which are subsequent to the interlocutory judgment, as that judgment is not referred to in them. (Code of Civil Pro., §§ 1301, 1316; 45 N. Y. Supr. Ct. 628; 24 Hun, 642; 27 id. 384; 5 Paige, 296; 4 Johns. 536; 8 Cow. 328; 90 N. Y. 546; 2 id. 500, 505.) A stockholder's personal liability for a debt of his company is neither penal nor *quasi* penal. It does not partake of the nature of punishment. It is not even imposed by statute, and is a contract obligation in every sense of the word. (*Johnson* v. *Underhill*, 52 N. Y. 203, 206–7; Constitution, art. 8, § 2; *Corning* v. *McCullough*, 1 N. Y. 47, 55; *Story* v. *Furman*, 25 id. 214, 222; *Lowry* v. *Inman*, 46 id. 125–126; *Wiles* v. *Suydam*, 64 id. 173; *Briggs* v. *Waldron*, 83 id. 582; *Farnsworth* v. *Wood*, 91 id. 308–314; *Chase* v. *Lord*, 77 id. 1, 33; 5 Hun, 210; 54 How. Pr. 213; 48 Conn. 9; Morawetz on Private Corporations, § 607; *Terry* v. *Calnan*, 13 So. Car. 220, 227; *Hobart* v. *Johnston*, 19 Blatchf. 359, 361; *Farnsworth* v. *Wood*, 91 N. Y. 308–314; *Kincaid* v. *Dwinelle*, 59 id. 548; *Shellington* v. *Howland*, 53 id. 376; *Briggs* v. *Waldron*, 83 id. 582,

587; Thompson on Stockholders, § 34; *Harger* v. *McCullough*, 1 N. Y. 47; *Corning* v. *McCullough*, id. 47; *Moss* v. *Averill*, 10 id. 449, 459; *Strong* v. *Furman*, 25 id. 214, 222; *Wiles* v. *Suydam*, 64 id. 173, 176; *Chase* v. *Lord*, 77 id. 33; *Aspinwall* v. *Sacchi*, 57 id. 335.) The statute should be reasonably construed. (Morawetz on Priv. Corp., § 613; *Johnson* v. *Underhill*, 52 N. Y. 203, 207; *Shellington* v. *Howland*, 53 id. 371; *Kincaid* v. *Dwinelle*, 59 id. 548, 551, 4 Abb. N. C. 40, 42; *Chase* v. *Lord*, 77 N. Y. 1; *Lowry* v. *Inman*, 46 id. 126.) Upon the facts proved, as between the stockholders and creditors, the whole amount of the capital stock must be taken to be $300,000. (*Scovill* v. *Thayer*, 105 U. S. 143; *Chubb* v. *Upton*, 5 Otto, 665, 667–669; *Pullman* v. *Upton*, 6 id. 328, 329; *Abbott* v. *Aspinwall*, 26 Barb. 206, 207; *McFarlane* v. *Triton Ins. Co.*, 4 Denio, 392, 396–7; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *B. & A. R. Co.* v. *Carey*, 26 id. 175; *Aspinwall* v. *Sacchi*, 57 id. 331–338; *Hyatt* v. *Esmond*, 37 Barb. 606; *Perkins* v. *Hatch*, 4 Hun, 137; affirmed, 64 N. Y. 634; *Davis* v. *French*, 4 Hun, 292; *Ruggles* v. *Brock*, 6 id. 164; *McCarthy* v. *Lavasche*, 89 Ill. 270; *Torbell* v. *Page*, 24 id. 46.) Stockholders will be estopped by tacit acquiescence in the acts of the company, or of their officers or associates. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *S. H. B. Co.* v. *E. H. B. M. Co.*, 90 id. 607, 613, 617; *In re M. S. N. Co.*, 6 Jurist [N. S.], 975; Thompson on Stockholders, §§ 160–175; Morawetz on Priv. Corp., §§ 375, 598; *In re Reciprocity B'k*, 22 N. Y. 17, 18; *Aspinwall* v. *Sacchi*, 57 id. 338; *Chubb* v. *Upton*, 5 Otto, 665, 667–9; *Mead* v. *Keeler*, 24 Barb. 24, 25; *Abbott* v. *Aspinwall*, 26 id. 202; *Ruggles* v. *Brock*, 6 Hun, 164, 166; *Wakefield* v. *Fargo*, 90 N. Y. 214, 217; Thompson on Stockholders, §§ 407, 410, 414; *Eaton* v. *Aspinwall*, 3 Abb. Pr. 422; 19 N. Y. 121, 122; *M. E. U. Church* v. *Pickett*, 19 id. 482, 485–6; *B. & A. R. Co.* v. *Cary*, 26 id. 75, 77, 78; *Mead* v. *Keeler*, 24 Barb. 20, 24–25; *Abbott* v. *Aspinwall*, 26 id. 206–7; *Upton* v. *Hansborough*, 3 Bissell, 417; *Chubb* v. *Upton*, 5 Otto, 667; *Curnen* v. *Mayor*, 79 N. Y. 511.) The whole amount of capital stock was not paid in. (Laws

of 1848, chap. 40, § 14; 1 R. S. 601, § 2; 1 Otto, 47, 48; 56 N. Y. 564; 4 Abb. [N. S.] 107, 110; 6 Paige, 486, 488; 3 Sandf. Ch. 466, 499; *Williams* v. *W. U. Tel. Co.*, 93 N. Y. 162.) All of the stockholders are liable. (*Wheeler* v. *Millar*, 90 N. Y. 359; *Aspinwall* v. *Sacchi*, 57 id. 335; *Johnson* v. *Underhill*, 52 id. 207–210; *Shellington* v. *Howland*, 53 id. 376; *Schenck* v. *Andrews*, 46 id. 593; *Cuykendall* v. *Douglass*, 19 Hun, 577; *Booth* v. *Campbell*, 37 Md. 529; Thompson on Stockholders, § 38; Morawetz on Private Corporations, § 597.) A certificate "stating the amount of the capital so fixed and paid in" must be signed and sworn to by the president and a majority of the trustees, and recorded in the county clerk's office within thirty days after the payment of the last installment of the capital stock so fixed and limited by the company. Unless this is done the stockholder's liability continues, although the whole amount of capital has been actually paid in. (*Eaton* v. *Aspinwall*, 3 Abb. Pr. 417, 423; affirmed, 19 N. Y. 119; *Aspinwall* v. *Sacchi*, 57 id. 334, 335; *Chase* v. *Lord*, 77 id. 7; *Brown* v. *Smith*, 13 Hun, 411; *Schenck* v. *Andrews*, 46 N. Y. 589, 593; *Boynton* v. *Hatch*, 47 id. 225–228; *Boynton* v. *Andrews*, 63 id. 93, 94, 97; 80 id. 650; *Wheeler* v. *Millar*, 90 id. 358.) The statutory liability is not limited to the original incorporators, but applies as well to those becoming stockholders after the incorporation. (*Briggs* v. *Waldron*, 83 N. Y. 582; *Johnson* v. *Underhill*, 52 id. 203, 212.) Each stockholder is liable severally to the amount of his stock, with interest from the commencement of the action, for all the debts, and the creditors may proceed by suits at law against each severally, or in equity against all. (*Mathez* v. *Neidig*, 72 N. Y. 100; *Pfohl* v. *Simpson*, 74 id. 137; *Wheeler* v. *Millar*, 90 id. 362–3; *Handy* v. *Draper*, 89 id. 234; *Burr* v. *Wilcox*, 22 id. 551; *Aspinwall* v. *Sacchi*, 57 id. 331; Thompson on Stockholders, §§ 353–365; *Erickson* v. *Nesmith*, 46 N. H. 371; *Wehrman* v. *Reakirt*, 1 Cinn. Sup. Ct. 230, 234; *Stewart* v. *Lay*, 45 Iowa, 604; *Mandeville* v. *Riggs*, 2 Peters, 482, 487.) The six years statute of limitations is the only statute applicable to creditors' suits against continuing stockholders. (*Wiles*

v. *Suydam*, 64 N. Y. 176, 177 ; *Conkling* v. *Forman*, 48 id. 527; *Knox* v. *Baldwin*, 80 id. 610 ; *Corning* v. *McCulloch*, 1 id. 47; *Handy* v. *Draper*, 89 id. 334 ; *Phillips* v. *Therasson*, 11 Hun, 141 ; *Booth* v. *Campbell*, 37 Md. 529.)   To enforce a stockholder's liability under section 24 of chapter 40, Laws of 1848, an action must be brought against a company on a debt payable within a year from the time it was contracted, within a year after it became due, and an execution must have issued against the company and returned unsatisfied. An action against one who has ceased to be a stockholder must be brought within two years thereafter. (*Handy* v. *Draper*, 89 N. Y. 337 ; *Jagger Iron Works* v. *Walker*, 76 id. 521 ; *Parrott* v. *Sawyer*, 13 Weekly Dig. 317; *Wheeler* v. *Millar*, 24 Hun, 541 ; 90 N. Y. 353.)   The creditor's right of action is assignable, and the assignment carries with it all of the assignor's remedies against the stockholders. (*Bolen* v. *Crosby*, 49 N. Y. 183 ; *Bonnell* v. *Wheeler*, 1 Hun, 332 ; *Pitcher* v. *Brayton*, 17 id. 429 ; *Pier* v. *George*, 14 id. 368 ; 86 N. Y. 613 ; *Sheridan* v. *Mayor*, 68 id. 30 ; *W. A. Co.* v. *Barlow*, id. 34, 38, 39 ; *Catlin* v. *Tobias*, 26 id. 217 ; *Smith* v. *Brady*, 17 id. 173 ; *Champlin* v. *Rowley*, 13 Wend. 258 ; 3 Pars. on Cont. 36.)   An action to enforce the liability of stockholders to creditors is properly brought by one for all. (74 N. Y. 137, 142 ; 72 id. 100 ; 73 id. 611 ; 91 id. 314 ; 101 U. S. 216.)   When the liability of the stockholders is determined, the creditors are required, by notice, to come in and prove their claims. (2 R. S. 466, § 56 ; Code, § 1807, 9 Paige, 598; 45 N. Y. 310 ; 1 Hun, 655, 667 ; 2 Paige, 19; 4 Johns. Ch. 619, 647, 687 ; 1 Barb. Ch. Pr. 521–524 ; 2 Dan. Ch. Pr. 1209–1214 ; 1 Van Santv. Eq. Pr. 544, 546 ; *Kerr* v. *Blodgett*, 48 N. Y. 62, 66 ; *Prouty* v. *R. R. Co.*, 1 Hun, 655–667 ; *Morris* v. *Mowatt*, 4 Paige, 142 · 2 Dan. Ch. 1212, 1213 ; 1 Barb. Ch. 525–6.)

*Richard C. Steel* for National Exchange Bank of Auburn, respondent.   A stockholder's liability does not cease when the capital has all been paid in, but only when the certificate has

also been made and recorded. (*Aspinwall* v. *Sacchi*, 57 N. Y. 335.) Having enjoyed the benefits of this increased capital, and, in form, a dividend withdrawn *pro tanto* from creditors, assets of the corporation, for their individual benefit, stockholders must now be estopped from denying the fact that the capital stock was increased to $300,000. (*Sewell's Case*, L. R., 3 Ch. 131; *Hull Flax and Cotton Mill* v. *Wellesley*, 6 H. & N. 38; *Reciprocity B'k*, 22 N. Y. 18; *Wakefield* v. *Fargo*, 90 id. 217; *Lathrop* v. *Kneeland*, 46 Barb. 432.) The recorded certificate is not evidence (conclusive or *prima facie*) of full payment of the capital stock. (*Schenck* v. *Andrews*, 46 N. Y. 593; *Boynton* v. *Hatch*, 47 id. 225; *Boynton* v. *Andrews*, 63 id. 93.) The liability of stockholders for corporate debts under section 310 is not a penal liability. The statute is not to be strictly construed to discharge them from liability. (*Aspinwall* v. *Sacchi*, 57 N. Y. 335; *Garrison* v. *How*, 17 id. 466; *Chase* v. *Ford*, 77 id. 1; *Bonnell* v. *Griswold*, 80 id. 128; *Pier* v. *Hanmore*, 86 id. 951.)

FINCH, J. If the certificate filed in 1873, asserting that the whole capital stock of $300,000 had been paid in, is conclusive in favor of the stockholders as against the creditors, the foundation upon which this recovery rests is taken away. One case furnishes a seeming authority for the doctrine, until its occasion and limitations are understood. (*Stedman* v. *Eveleth*, 6 Metc. 114.) That decision originated in an existing stockholder's liability so wide and destructive as to induce a conclusion that the certificate was required largely for their protection. The failure to pay in the whole capital stock threw upon the individual stockholder a liability, not measured by his shares, but extending to the whole corporate debt. In that respect the statute of Massachusetts was afterward changed by the substitution of a limited liability like our own; and the question of the effect of the certificate arising again, it was held that it was not conclusive, and the creditors might show non-payment in fact of the full capital, and found upon that the stockholder's liability to the par value of his shares. (*Barre Nat.*

*B'k* v. *Hingham M'fg Co.*, 127 Mass. 563.) Nor is the conclusiveness of the certificate in any manner intimated or sustained by the case of *Bonnell* v. *Griswold* (80 N. Y. 128). The question there concerned, not the liability of stockholders derived from the fact of non-payment, but that of the trustees for making a false certificate of the alleged fact; and it does not follow, because a remedy is given against the officers for making no report, under one section, and for making a false report under another, that the liability of the stockholders for non-payment of the full capital is thereby taken away. On the contrary the cases quite plainly indicate that it remains. (*Schenck* v. *Andrews*, 46 N. Y. 589; *Boynton* v. *Hatch*, 47 id. 225; *Boynton* v. *Andrews*, 63 id. 93; *Brown* v. *Smith*, 13 Hun, 411; 80 N. Y. 650; *Wheeler* v. *Millar*, 90 id. 358.) Under section 10 of the act of 1848 two things are requisite to end the stockholder's liability. The whole amount of capital stock must be paid in, and the certificate of that fact required by section 11 must be made and recorded. A false assertion of compliance does not make compliance with the first condition. The fact must exist, and then it must be certified. While the statute makes some papers presumptive evidence of specific facts, it does not give in terms even that force to the certificate in question. The penal provision (*Pier* v. *Hanmore*, 86 N. Y. 95), punishing officers for a false report of capital paid in is entirely consistent with a contract liability of the stockholders until that condition is in truth fulfilled.

Our next inquiry relates to the alleged increase of the capital stock. Originally, and by the articles of incorporation, which were duly filed in 1868, the capital stock of the iron company was fixed at $200,000. In March of the next year the trustees passed a resolution to increase the capital stock by adding thereto $100,000, the same to be divided *pro rata* among the existing stockholders, whose notes payable in one, two, three, four, five and six months, in equal amounts, were to be taken therefor, and the new stock issued upon their payment. In the succeeding April there was a meeting of stockholders, at which the resolution of the trustees was approved

and ratified, after a recital admitting its legal insufficiency as it stood. But no notice of such meeting of stockholders was given, as required by section 21, chapter 40, of the act of 1848, nor was any certificate of the proceedings of such meeting made, or filed, as required by section 22 of the same act. The attempted increase was, therefore, illegal, but the respondent insists that, nevertheless, as against the creditors of the company, the defendant stockholders by accepting their proportions of the increased stock, by voting for its increase, by taking dividends upon it, and holding it out to those dealing with the company as an actual component of its capital, are estopped from denying the legal validity of the increase and must be held responsible as if it was valid. The authorities for this doctrine are numerous and strong. (*Eaton* v. *Aspinwall*, 19 N. Y. 119; *Chubb* v. *Upton*, 5 Otto, 665; *Aspinwall* v. *Sacchi*, 57 N. Y. 331; *B. & A. R. Co.* v. *Cary*, 26 id. 75; *Kent* v. *Quicksilver M. Co.*, 78 id. 159; *Sheldon H. B. Co.* v. *Eickemeyer Co.*, 90 id. 613.) The answer made to them is that an act absolutely and wholly void, because, under the law, incapable of being performed, cannot be made valid by estoppel. This is true where under the law there is an entire lack of power to do the act which is brought in question. The distinction is well illustrated in *Scovill* v. *Thayer* (105 U. S. 143). Under the law of Kansas no company like that then before the court could increase its capital to more than double an amount originally authorized. The capital was sought to be increased in excess of that amount. As against creditors it was claimed to be a valid increase by the operation of an estoppel, but the court ruled otherwise, and justly; for the very foundation of an estoppel, the misleading of creditors to their injury, was wanting. The latter knew and were bound to know that no power existed to so increase the capital, and therefore that it was not increased; and hence they were not, and could not be misled. But where, as in the present case, the abstract power did exist, and there was a way in which the increase could lawfully be made, and the creditors could, without fault, believe that the increase had been law-

fully effected and the necessary steps had been taken, there the doctrine of estoppel may apply, and the increased stock be deemed valid as against the creditors who have acted upon the faith of such increase. The referee has found that each and every one of the present defendants have done some act which brings them within the range of the estoppel alleged, or hold shares of the stock which in the hands of the assignors stood charged and burdened with a liability for the company's debts. We must, therefore, treat the increase as lawful, and precisely as if the needed preliminary steps had in truth been taken.

It is not denied that the increased stock of $100,000 was never fully paid in. That brings us to consider the effect of that omission, and puts before us conflicting theories of the meaning and construction of the statute. On the part of the appellants it is argued that the stockholders' liability under section 10 of the act of 1848 is in terms confined to the original capital stock as fixed and limited by the articles of incorporation; that this construction is inevitable in the light of the last clause of the same section, which requires the stock to be paid in, one-half within one year and one-half within two years "from the incorporation of such company," upon penalty of corporate dissolution; that the stockholders' liability is in derogation of the common law, and the statute imposing it must be strictly construed; that section 20, which permits an increase of capital "subject to the provisions and liabilities of" the act, imposes those provisions and liabilities only upon the company and corporation in its organized form, and not at all upon the individual stockholders, save in the case of existing companies previously formed, in which case the significant language is used, "thereupon *such* company, its officers and *stockholders*, shall be subject to all the restrictions, duties and liabilities of this act;", and that even if the stockholders on an increase of capital are made subject to the liabilities imposed, the only one existing by reason of non-payment of capital is for non-payment of capital originally fixed and limited, and nothing more. So far as this construction depends upon

the use of the words " company " and " corporation," as distinguished from the individual holders of shares, the learned counsel for the respondent calls our attention to an analogous case, *Wakefield* v. *Fargo* (90 N. Y. 214). No adequate reason can be given why the construction adopted in that case should not prevail in this. It is easy to see that a determination which left the non-payment of increased stock free from a consequent liability of stockholders would furnish an easy mode of evading the statute. The original capital would be fixed at a small amount and all paid in, and then an increase be made without responsibility to any extent required. But this construction does not solve the whole difficulty, and fails to take into account its most serious aspect. That is expressed in the inquiry whether the statute intends to revive a terminated liability, and contains language which necessarily effects that result. The question of construction must meet a case like this: A corporation is organized with a capital of $200,000, all paid in, and the proper certificate in due time made and recorded. That ends the stockholder's liability. A purchaser buys some of the stock after ascertaining that no liability clouds it. Thereafter the stockholders lawfully increase the stock to $300,000, against the vote and protest of such new stockholder. The increased stock not being paid in full, and he, holding none of it, is he at once liable for the debts of the company to the par value of the very unburdened and unclouded stock which he bought because it was such ? Does the statute thus revive a liability which the statute itself declares ended ? And does justice to the creditor require it ? He has all the security as to the original stock which the statute ever contemplated without such added liability. If there had been no increase he would have had for his reliance the full-paid, original capital in the treasury of the corporation. But he has that still, after the increase. It is there just the same, and gives him its security exactly as before. Manifestly the unpaid increase ought not in justice to either party to affect the full-paid original, and the rights and liabilities of its holders. If the statute means that the increased stock by itself, and its

holders by themselves, shall be subject to precisely the same liabilities as was the original stock by itself and its holders by themselves, all the language of the act is satisfied, no injustice is done to the creditors, and a dead liability is not revived.   In that event the holders of the increased stock become liable to creditors up to the par value of such increased stock.   The fund that is in default is made good ; the fund that is not in default is left unharmed.   The creditor gets all which the statute contemplates as his due, the security of the original stock fully paid into the treasury, and the liability of the holders of the increased stock in the room of its non-payment.   Did the statute mean, in such a case, that creditors might take from stockholders $300,000, instead of $100,000, when $200,000 had been paid in, and that .portion of the stock freed by the same law from liability ?   The learned counsel for the respondent expresses our thought in his brief, though perhaps not consciously.   He says the provisions of section 20 "subject the *increase of capital itself* to the provisions and liabilities of the act."   That is the correct statement.   The section deals only with the increased capital as an entity by itself, and with its holders. It has no reference to, and no effect upon the original capital and its holders.   It intended to treat the increased capital and its holders precisely as it had already treated the original capital and its holders, but nothing else.   It says no word of a revival of the ended liability.   It gives no hint of any such purpose, which would be unjust to the original stockholders, and would give creditors a right beyond any thing to which they were ever entitled.   Why should we construe the section harshly when the whole force of every word in it may be exhausted by confining it to its real subject, and to the stockholders who are such in respect to that subject ?   The moment we confine ourselves, as we should, to a literal interpretation of section 20, we find it saying only that it is the *increase* which is subjected to the liabilities of the act, and as a consequence only the holders of that increase to the par value of that stock who are liable for debts.   The innocent holder of full-paid stock, once discharged by law, because his duty was

done, goes free, as he should.   We ought not to hold him in
respect to stock which is sinless, because there is stock which is
guilty.   The learned counsel for the respondent intimates that
section 25 of the act of 1848, which requires the keeping of a
stock book, and section 2 of the act of 1869, which permits in
the stockholders' action the naming of those as defendants who
appear on the stock ledger, recognize no distinction between
the original and the increased stock. That is true ; but nothing
in the scope or purpose of either section required that an exist-
ing and recognized distinction should be again drawn.   The
learned counsel also turns our attention to expressions in the
adjudged cases, which mix and treat as one the two sorts of
stock.   But none of these cases had this question up, or any
question which involved the difference between the two. *
(*Johnson* v. *Underhill*, 52 N. Y. 207 ; *Shellington* v. *How-
land*, 53 id. 376 ; *Schenck* v. *Andrews*, 46 id. 593 ; *Cuyken-
dall* v. *Douglas*, 19 Hun, 577.)   Possibly the question might
have been raised in the last case, but it was not.   There is,
therefore, no authority in the way of the conclusion we
have reached.   Ordinarily no difficulty will arise in sepa-
rating the two classes of stock, and assigning to their holders
their proper rights and liabilities.   If stockholders should
so mix and mingle the two as to make such separation abso-
lutely impossible, they might perhaps be left to the conse-
quences of their own act, or that of their officers and agents.
In the present case there is no such difficulty.   The debts of
the corporation proved reach almost $134,000, and the defend-
ants have been required to pay that sum in *pro rata* assess-
ments measured by their entire holding of both classes of the
stock.   As only the holders of the increased stock are liable at
all, and they only to the par value of such holding, the cred-
itors have recovered too much.   They can only receive in the
aggregate the par of the increased stock — that is, $100,000,
with interest from the commencement of the action, that sum
to be awarded *pro rata* to the creditor, and assessed against the
holders of increased stock in proper proportions.   The case
must go back for such adjustment, unless we can hold that the

original stock was not paid in in full, or the proper certificate not made and recorded. Those questions remain to be considered.

So far as the stock was issued for property bought of Whitney and French, no question is here raised, but as to Jones it is said the turn made of the debt due to him from the company for work in constructing its furnaces was not a payment of money upon the capital stock within the meaning of section 14 of the act of 1848. If the company had paid the money to Jones in discharge of the debt due him, and then Jones had handed back the same money as a payment upon his stock, no question could have arisen. Precisely that was the substance of the transaction, although the form of passing the money was omitted. We think the payment was sufficient. But the only certificate ever made of payment of capital stock was that of 1873, which called the capital $300,000, and asserted that it was all paid in. That certificate covered both classes of stock, and asserted full payment of both. As to the original stock it was true, and was a sufficient compliance with the statute, unless there be force in the two objections that it was not recorded, and was not made within thirty days after the payment of the last installment. We agree with the learned referee that the thirty days clause in section 11 is directory merely, and that upon the fact found by him that the omission to record was wholly the fault of the clerk who was directed to make the record, the defendants are not to be prejudiced by the omission. Their duty was done.

We have carefully examined the questions raised respecting the claim of Mudgett & Tillinghast as representatives of the debts due the Rossie Iron Works and Eastwood; those relating to the amount collected of Lord, and those affecting the estate of McVean, and are satisfied with the referee's conclusions.

All the judgments entered against the defendants must be reversed, and a new trial granted, costs to abide the event. Since there was here but one action and one record, we allow but one bill of costs, and that subject to the event of the action.

EARL, J., concurs. RAPALLO and MILLER, JJ., concur in result, on the ground that none of the defendants are liable for the old stock held by them, but further hold that none of them are liable for the default to pay the increased stock. RUGER, Ch. J., and ANDREWS, J., dissent, holding that said defendants were liable both for the old and new stock. DANFORTH, J., took no part.

Judgments reversed.

Upon motion subsequently made the remittitur was amended so that instead of reversal it ordered a modification of the judgments below so as to conform with the opinion.