CHARLES E. PATTERSON, RECEIVER, ETC., OF THE MERCHANTS AND MECHANICS' BANK OF TROY, APPELLANT, *v.* DANIEL ROBINSON, THOMAS A. KNICKERBOCKER, CHESTER GRISWOLD AND JAMES E. PINKHAM, RESPONDENTS.

*Trustees of manufacturing corporations* — 1848, *chap.* 40, *sec.* 23 — *what "assent" is required to make a trustee liable thereunder.*

May 1, 1875, the defendant Robinson, and one Vail, trustees of a woolen mill incorporated under the general manufacturing act, assumed the management of its business, and became thereafter responsible for its conduct. On that date the whole indebtedness of the mill was $434,214, being $184,214 in excess of its capital stock, which was $250,000; at the time of the commencement of this action the whole indebtedness of the company was $515,770, making an increase during the time of Robinson's participation in the control of $81,656. On May 1, 1875, the said company was indebted to the bank, of which the plaintiff is the receiver, in the sum of $300,000, and the said indebtedness increased during Robinson's administration to the sum of $439,000, but the interest accruing upon the amount due on May 1, 1875, was equal to $105,000 of this increase. The interest accruing during Robinson's administration, upon the entire indebtedness of the mill, existing on May 1, 1875, exceeded the amount of the increase of its general indebtedness during that time. Robinson did not assent to the creation of the indebtedness existing on May 1, 1875.

In an action by the receiver of the bank to charge Robinson with the personal liability imposed upon him by section 23 of chapter 40 of 1848, for the excess of the indebtedness of the company over the amount of its capital stock :

*Held,* that for the indebtedness existing on May 1, 1875, which had been created without Robinson's assent, and for the indebtedness which was thereafter incurred to procure means to discharge the interest accruing thereon, Robinson was not liable under the act.

That, for so much of the increase of the indebtedness to the bank as exceeded the interest accruing upon the debt due to the bank on May 1, 1875 — that is, for $139,000, less $105,000, or $34,000 — Robinson was personally and individually liable to the plaintiff under the said act.

Where a trustee does not assent to the creation of an indebtedness exceeding the
capital stock of the company, his subsequent failure to dissent, when informed
of the fact, is not equivalent to the assent required by the act.

Two of the defendants were trustees of the company during the time in which
it incurred the said indebtedness ; but it was not shown that they ever attended
any meetings of the trustees, or were consulted with reference to the manage-
ment of its business, or participated in its affairs, except to sign its annual
reports, and then only upon their faith in the assertions of a co-trustee that
they were correct.

*Held*, that no such assent on their part was shown as was required to make them
liable under the said act.

APPEAL from a judgment in favor of the defendants, entered
upon the report of a referee.

This action is brought and a recovery sought against the defend-
ants as trustees of the Schaghticoke Woolen Mills, under the
provisions of section 23, chapter 40, Laws 1848, being the " act to
authorize the formation of corporations for manufacturing, mining,
mechanical or chemical purposes." The section is as follows : " If
the indebtedness of any such company shall at any time exceed the
amount of its capital stock, the trustees of such company assenting
thereto shall be personally and individually liable for such excess to
the creditors of such company." The company was organized in
1865 with a capital of $150,000, which was increased the same year
to $250,000, and was fully paid in. It commenced the business of
manufacturing cassimeres in 1867, and continued until January,
1879, when it suspended with an indebtedness to the Merchants and
Mechanics' Bank of about $439,000. The plaintiff was appointed
receiver of the bank in the October previous. He recovered
judgment against the woolen mills in July, 1879, upon account of
said indebtedness in the sum of $438,859. From the 16th of June,
1874, until the 18th of June, 1878, the defendants Robinson, Gris-
wold and Knickerbocker were three of the five duly elected and
acting trustees of the woolen mills. Knickerbocker retired in
January, 1878, and on the 18th of June, 1878, the defendant Pink-
ham was elected a trustee, and with the others named, except
Knickerbocker, continued to act until the suspension of its business.
D. Thomas Vail and Wm. H. Hart were the other trustees. Vail
and the defendant Robinson were trustees from the organization of
the company until this action was commenced. Vail, who has since

died, was the president of the mills company. He was also president of the Merchants and Mechanics' Bank at the same time.

The referee found that on May 1, 1875, the defendant Robinson, with Vail, assumed the management of the business of the woolen mills, and thereafter was responsible for its conduct. That the whole indebtedness of the mills at that date was $434,214, being $184,214 in excess of its capital stock; that of this sum $300,000 was due to the bank; that at the time of the commencement of this action the whole indebtedness of the company was $515,770, making an increase of the total indebtedness of the company during the time of Robinson's control, $81,656. The referee held that Robinson had not assented to the indebtedness of the company incurred prior to May 1, 1875, and therefore was not liable for any of it, or of the interest which accrued upon it after he did assume control. He estimated this interest upon the entire old debt at $111,444, and as this item exceeded the entire increase of debt incurred under Robinson's control, held that Robinson had not assented to any increase of debt and therefore was not liable. The referee, however, found that the indebtedness of the company to the bank during Robinson's control increased from $300,000 to $439,000, but that of this increase $105,000 was upon account of interest upon the $300,000 due the bank May 1, 1875; that as Robinson could not prevent this interest accruing, it was not to be reckoned in estimating the amount of increased indebtedness to the bank to which he assented; deducting this sum, left $34,000 as the only increase of debt to the bank under Robinson's management; and as to this the referee held that, excluding the interest which Robinson could not prevent, he was not liable, since he did not assent to any aggregate increase of the company's debt over its capital stock, nor create in the aggregate any increase; that he was not liable to any single creditor whose debt might have been increased, because in the aggregate he had not assented to any increase. Further facts are stated in the opinion.

*O. Gambell*, for the appellant.

*Esek Cowen*, for respondents Robinson and Pinkham.

*C. A. Waldron*, for respondent Knickerbocker.

*W. C. Holbrook*, for respondent Griswold.

LANDON, J.:

The referee found that the defendants Griswold and Knicker-bocker did not assent to any of the indebtedness of the company in excess of its capital stock. If, with knowledge of the situation of the company, they had assented to the policy of which the creation of an excess of debt was a necessary part, it would be diffi-cult to sustain this finding. But it does not appear that they ever attended any meeting of the trustees, or were consulted with refer-ence to the management of the business, or participated in its affairs, except to sign its annual reports, and then only upon their faith in the assertion of an associate trustee that they were correct. In the view which we entertain of the assent necessary to make a trustee personally liable under section 23, chapter 40, Laws 1848, his subsequent failure to dissent is not equivalent to an assent con-curring with the creation of the excess of debt. These two trustees did not know what was done until after it was done; they said nothing and did nothing in furtherance of its creation. Assuming that the creditor, with whom the debt was contracted, relied upon section 23 for his protection, these trustees did nothing to lead him to suppose that they were assenting to the contract with him. The conclusion to be reached from all the facts is one of fact, and the test of that conclusion is whether the mind is convinced that as a matter of fact these trustees did assent. Argument based upon their duty as trustees might support a charge of negligence, but does not disprove the affirmative evidence that in this respect they did no duty. The burden resting upon the creditor to show their assent, we do not think their association or familiarity with the business was of the character to convince the mind that they ever gave the matter any special attention, much less any assent to the debts in question.

These views also lead to the support of the finding of the referee that the defendant Robinson did not assent to the excess of indebt-edness of the company created prior to May 1, 1875. The referee finds that the defendant Robinson assented to all the indebtedness of the company created after May 1, 1875, and the defendant Pink-ham to all created after June, 1878. We concur with the referee in the view that since Robinson and Pinkham did not assent to the debt created before May 1, 1875, they cannot be held to have

assented to so much of its subsequent increase as was caused by the interest accruing thereon.

On May 1, 1875, the indebtedness of the company exceeded its capital stock in the sum of $184,214. As Robinson had not assented to such excess he was not liable for it. At no time thereafter was the indebtedness of the company less than its capital stock. At that time it was indebted to the Merchants and Mechanics' Bank in the sum of $300,000, and under the findings in this case no part of that sum was ever thereafter paid. The creation therefore of any new indebtedness after May 1, 1875, would be the creation of an additional excess of indebtedness over its capital stock. The trustees assenting to such excess would be " personally and individually liable to the creditors of the company," under section 23, chapter 40, Laws of 1848. What creditors? Certainly not those to whom such excess was not owing, but to those to whom it was. The learned referee construed the section cited to be of a penal character. In a loose and general sense that may be true, as when it is said, " he that is surety for a stranger shall smart for it." Unlike sections 12, 13 and 15 of the same act, section 23 commands nothing and forbids nothing, and therefore affixes no forfeiture as the penalty for the commission of what is forbidden or for the omission of what is commanded. It does not forbid the company to create further debts when those already created equal in amount the capital stock; rather it permits such excessive creation; but to secure payment to the creditors who become such after the limit of the capital stock is exceeded, it adds the personal and individual liability of the trustees assenting to such excess, to the liability of the company. Let the excess of indebtedness over the amount of the capital stock exist; if the trustees then create further excess of indebtedness, their personal liability seems to attach *eo instanti* the debt is created. Otherwise we should have to hold that it was the exclusive debt of the corporation in the first instance, and then, for some subsequent offense of the assenting trustee, he became condemned by the statute to pay it. There is no such subsequent offense expressed in the section. The nature of the case does not admit of it, unless we hold that subsequent assent is the assent contemplated by the section, a view which we do not entertain. The assent and the creation of the excessive debt con-

curring, the corporation and the assenting trustee severally bind themselves by the contract creating it. The statute extends the personal liability of the trustee to the creditor. The published annual reports have advised him that the debts of the company have already reached the amount where the personal liability of the trustee must attach if more debts be created, and *non constat* he would not have trusted the company except for the security the statute extended to him. The assenting trustee is quite willing to add his personal liability to that of the company. To him the affairs of the company promise success if its business can be continued, and he knows it can be upon a condition which he accepts. Section 23 provides one of the means contemplated by section 2, article 8 of the Constitution, which requires that " dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law." This construction is in harmony with the views of the courts in other cases. In *Wiles* v. *Suydam* (64 N. Y., 173), the complaint united a cause of action under section 10 with a cause of action under section 12. Section 10 provides that the stockholders shall be severally liable to the creditors to an amount equal to the amount of the stock held by them for all debts, until the whole amount of capital stock shall have been paid in and a certificate thereof recorded. Section 12 imposes a penalty. The court held that the two causes of action were improperly united, because the cause of action under section 10 was for a contract liability, the stockholder being primarily liable for the debts contracted by the company, and, therefore, this cause of action was improperly joined with a cause of action for a penalty. So in *Corning* v. *McCullough* (1 N. Y., 47), the statute declaring the stockholders personally liable, the contract of the company bound them at the same time it bound it ; and the cause of action was held to be upon contract, and not upon a penalty. The statute liability, it was said in *Story* v. *Furman* (25 N. Y., 223), is part of the obligation of the contract. If, then, the assenting trustee becomes bound by the contract whereby the excessive debt is created, he becomes bound to the creditor, and he cannot be discharged without the creditor's consent. The liability incurred under section 10 may be an exception to the rule, for the section expressly says the liability shall exist

*until* the capital stock be paid in and a certificate thereof recorded. (*Veeder* v. *Mudgett*, 95 N. Y., 295.) But no such temporary liability is contemplated by section 23.

The liability incurred by Robinson to the bank would not, therefore, be discharged except by payment to the bank. The decrease of the aggregate excess of liability caused by paying creditors other than the bank, would not cancel Robinson's liability to the bank. The referee finds that he assented to the increase of the debt to the bank in the sum of $34,000. This finding is consistent with and in part a deduction from the finding of the court in a former action between this plaintiff and Robinson and Pinkham, brought to recover upon account of an alleged fraudulent conspiracy, whereby the funds of the bank were diverted to the woolen company. The court found in that action that there was no conspiracy, and as leading to that conclusion, " that any increase of indebtedness of the Woolen Mills Company to the bank, between May, 1875, and November, 1878, was caused by the payment by the bank of debts and interest on debts of said Woolen Mills Company held by others than said bank, and by paying the interest upon the debt of $300,000 held by the bank." The judgment in the former action was properly received as evidence to prove between the same parties the facts determined therein. (*Marston* v. *Swett*, 66 N. Y., 211.) It follows that the defendant Robinson is liable in the sum of $34,000. The defendant Pinkham is found to have assented to the increase of debt to the bank after June, 1878, in the sum of $1,382, parcel of the $34,000 assented to by Robinson.

The judgment appealed from should be affirmed, with costs, as to the defendants Knickerbocker and Griswold, and reversed as to the defendants Robinson and Pinkham, and judgment directed against them for $1,382, and separately against Robinson for $32,618, with interest upon each sum from January 6, 1879, with costs in this court and the court below.

LEARNED, P. J., and BOCKES, J. concurred.

Judgment affirmed, with costs, as to Knickerbocker and Griswold; reversed as to Robinson and Pinkham, and judgment directed against them for $1,382 and against Robinson for $32,618, with interest on each sum from January 6, 1879, with one bill of costs in this court and in the court below against Robinson and Pinkham.